635 A.2d 14

## VAN WYK, INC.

v.

## FRUITRADE INTERNATIONAL, INC.

**No. 489, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 3, 1994.

Rick A. Rude, Falls Church, VA (Robert B. Suder, Baltimore, on the brief), for appellant.

James D. Skeen (Wright, Constable & Skeen, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and BISHOP and FISCHER, JJ.

BISHOP, Judge.

Appellee, Fruitrade International, Inc. ("Fruitrade"), filed a complaint in the Circuit Court for Baltimore City against appellant, Van Wyk, Inc. ("Van Wyk"), Hoover Trucking Service, Inc. ("Hoover"), and James J. Maloney trading as Coastal Transportation Co., for damages to a shipment of raspberries. Van Wyk filed a motion to dismiss the complaint, alleging that Fruitrade violated the statutory time period set forth in 49 U.S.C. § 11706(c)(2). The chambers judge dismissed Fruitrade's complaint with prejudice, whereupon, Fruitrade requested an en banc review of the dismissal. The en banc panel vacated the order granting Van Wyk's motion to dismiss. The case was tried without a jury, and the trial judge found Van Wyk liable to Fruitrade in the amount of $23,807.65. Van Wyk filed a timely notice of appeal to this

Court. Neither Hoover nor Maloney are parties to this appeal.

## Issues

Van Wyk raises several issues, which we rephrase and reorder as follows:

1. Whether the en banc panel erred when it ruled that Fruitrade's complaint was not time barred under 49 U.S.C. § 11707(e). (An appeal from a decision of an en banc panel is permitted pursuant to Md.Rule 2–551(h)).

2. Whether the trial court erred when it found Van Wyk liable under 49 U.S.C. § 11707 for the damage to Fruitrade's cargo.

3. Whether the trial court erred in its application of the legal and factual burdens set forth in 49 U.S.C. § 11707.

4. Whether the factual findings made by the trial court were arbitrary, capricious, and clearly erroneous.

5. Whether the trial court erred when it premised liability against Van Wyk upon a factual basis which Fruitrade did not plead and that had no causal relation to the alleged damages.

## Facts

Fruitrade, a Canadian trading company that buys and sells frozen fruits, frozen vegetables, and juice concentrates, arranged for the shipment and sale of two containers of individually quick frozen ("IQF") raspberries from a supplier in Chile to Big Valley Marketing, a purchaser in Decatur, Michigan. The raspberries were transported from Valparaiso, Chile, on a Chilean steamship and, on June 15, 1988, at approximately 5:30 p.m., arrived at Hoover, a trucking terminal/warehouse located in Baltimore, Maryland. Fruitrade hired Hoover to transload the shipment of raspberries from the Chilean steamship to Van Wyk's refrigerated trailer. Two Hoover employees began unloading the raspberries at 7:00 p.m. and completed the transfer of the cargo at approximately 11:00 p.m. Van Wyk's driver, Robert Hamilton, was present at the terminal and observed the transfer. The shipment ultimately was received by the purchaser in Decatur, Michigan.

Mr. Hamilton testified that the Hoover employees backed the Van Wyk trailer into an unsealed dry dock and up against one of the shipment containers. One employee hand stacked the cartons of raspberries onto pallets and another employee loaded the pallets into the trailer. Mr. Hamilton also testified that, when he closed the trailer doors, he noticed that the boxes in the rear of the trailer had started to accumulate "a dew like it was starting to melt" and that the "cardboard [was] starting to collapse from the moisture." Hoover was responsible for loading the shipment into Van Wyk's trailer; Mr. Hamilton was responsible only for closing the doors of the trailer. Before departing the terminal that evening, Mr. Hamilton signed the bill of lading for the delivery of the raspberries. The bill of lading indicated that Mr. Hamilton received the cargo in "good order."

Emma Jean Stambek, a general manager for Big Valley Storage Company, Inc., a public freezer warehouse in Decatur, Michigan, testified that, on June 17, 1988, she went to the loading dock and received the shipment of raspberries. Ms. Stambek checked the cargo and noted on the bill of lading: "Product shows thaw. Juice in bottom of bags. Boxes crushed on bottom. Condition of berries unknown. Plus 30 degrees [Fahrenheit]. Plus 20 degrees [Fahrenheit] inside to the front."

When Ms. Stambek notified Big Valley Marketing and Fruitrade of the condition of the raspberries, Fruitrade sent Kenneth Wojcik, a surveyor, to the cold storage warehouse. In his report, Mr. Wojcik recorded:

| | |
|---|---|
| [6](b) Condition of interior and exterior packing | (b) Lower palletized boxes collapsing, evidence of wetting from defrosting. refrozen at time of survey. |
| | * * * |
| [7](a) Description of loss/damage. | [7](a) Thawing. |
| (b) After examination, cause attributed by surveyor[.] | (b) Unloading of ocean container and transference to standard trailer in hot humid weather conditions. |

Wojcik also stated in his report that:

> [Mr. Hamilton] left the warehouse and then returned at about 7:00 p.m. Only one skid had been loaded, and the doors of both the container and trailer were open. The load was transferred one pallet at a time. Two men in the container hand palletized the load. The driver estimated the outside temperature 85 degrees, and stated that the temperature inside the trailer was at least 55 degrees. The transference was not completed until about midnight.

> When the driver left Hoover Transportation warehouse, he stopped at a truck stop to weigh the truck. At this time he took a temperature reading in the trailer with a probe meter. The meter registered between 28 and 32 degrees.

> We further inquired of Van Wyk as to why the driver had signed the bill of lading without taking exceptions, as the conditions under which the load was transferred were less than advantageous, and the driver knew the load was perishable. Van Wyk's response was that this was an error.

As a result of the damage to the shipment, Fruitrade was unable to sell the raspberries as IQF, and instead, sold them as "block frozen," a considerably less valuable form of the product. Fruitrade claimed a loss of nearly $24,000, and sent a letter to Van Wyk claiming that Van Wyk was responsible for the damage to the raspberries. On February 1, 1989, Van Wyk denied Fruitrade's claim, and Fruitrade subsequently filed suit against Van Wyk in January 1991.

## Discussion

### I. Statutory Time Period

We shall address first Van Wyk's contention that Fruitrade's complaint is time barred under 49 U.S.C. § 11706(c)(2) (1979 & Supp.1993), which provides:

> A person must begin a civil action to recover damages under section 11705(b)(3) of this title within 2 years after the claim accrues.

Initially, the trial court found that the statutory time period barred Fruitrade's claim against Van Wyk and granted Van Wyk's motion to dismiss. The en banc panel, however, concluded:

> [I]t seems clear that the basis for the Chambers Judge's ruling as to both defendants was his erroneous conclusion that the statute of limitations in 49 U.S.C. § 11706(c)(2) applied to plaintiff's claim against these defendants. Section 11706(c)(2) provides for a two-year period of limitations from date of delivery or tender of delivery by the carrier for actions "for damages resulting from the imposition of rates for transportation or service...." See 49 U.S.C. 11705(b)(3). Plaintiff's claims are for damage to cargo and are not in any way related to "rates for transportation or service."

We agree with the en banc panel that the chambers judge improvidently granted Van Wyk's motion to dismiss. Section 11706(c)(2) clearly states that "a person must begin a civil action to recover damages under § 11705(b)(3) of this title within 2 years after the claim accrues." 49 U.S.C. § 11705(b)(3) provides:

> A common carrier providing transportation or service ... is liable for damages resulting from the *imposition of rates for transportation or service* the Commission finds to be in violation of this subtitle.

(Emphasis added). Fruitrade's claim arises from damage to its cargo and not from damages resulting from the imposition of illegal transportation or service rates.

Section 11707 of Title 49 U.S.C. generally covers "liability for actual loss or injury to the property." Subsection (e) of that section specifically provides:

> "A carrier ... may not provide by rule, contract, or otherwise, a period of less than ... 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier ... gives a person written notice that the carrier ... has disallowed any part of the claim specified in the notice."

Although 49 U.S.C. § 11707(e) does not constitute a statute of limitations, it does limit the ability of a carrier to reduce, by contract or otherwise, the time for a shipper to commence an action against the carrier. This section clearly states that, at the very least, a shipper has two years within which to bring a civil action against a carrier. Van Wyk, a common carrier subject to the provisions of 49 U.S.C. § 11707, denied Fruitrade's claim for damage to the raspberries on February 1, 1989. Fruitrade filed suit against Van Wyk in January 1991, within two years from the date of Van Wyk's notice denying Fruitrade's claim; therefore, Fruitrade's complaint against Van Wyk is not time barred.

### II–IV. Application of 49 U.S.C. § 11707

Van Wyk next contends that the trial court erred in its application of the legal and factual burdens in 49 U.S.C. § 11707 (1979 & Supp.1993), and that its factual findings were clearly erroneous. Van Wyk maintains that the trial court (a) erroneously held Van Wyk liable for damage to the raspberries that existed at the time Hoover tendered the shipment, (b) incorrectly assessed Van Wyk's duties and obligations to Fruitrade at the time Hoover tendered the shipment, and (c) erroneously relied on the bill of lading signed by Mr. Hamilton.

We shall review first the standard of appellate review for actions tried without a jury and provide an overview of the law governing the liability of a carrier for damage to an interstate shipment.

### *Standard of Review*

■ Rule 8–131(c) provides:

**Action tried without a Jury.**—When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The appellate court must view the evidence in the light most favorable to the party prevailing below. *Clemson v. Butler Aviation–Friendship, Inc.,* 266 Md. 666, 671, 296 A.2d 419 (1972) (citations omitted). "It is thus plain that the appellate court should not substitute its judgment for that of the trial court on its findings of fact but will only determine whether those findings are clearly erroneous in light of the total evidence." *$3,417.46 U.S. Money v. Kinnamon,* 326 Md. 141, 149, 604 A.2d 64 (1992). "[I]f substantial evidence is presented to support the trial court's determination, it is not clearly erroneous and hence will not be disturbed on appeal." *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 41, 382 A.2d 564 (1978). The clearly erroneous portion of section (c), however, does not apply to a trial court's determinations of legal questions or to the legal conclusions it draws from its factual findings. *Davis v. Davis,* 280 Md. 119, 124, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

An appellate court will affirm a trial court's judgment on any ground adequately shown by the record, even a ground not relied upon by the trial court. *Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979). Therefore, although the trial judge's basis for the judgment may be incorrect, an appellate court may still examine the record "to determine if the court reached the right result ... albeit for the wrong reason." *Faulkner v. American Casualty Co.,* 85 Md.App. 595, 629, 584 A.2d 734 (1991).

### *49 U.S.C. § 11707*

The liability of a carrier for damage to an interstate shipment is governed by 49 U.S.C. § 11707, which provides in pertinent part:

[A] carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier,

(2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading. . . .

In order to establish a prima facie case under § 11707(a)(1), the shipper must show "[1] delivery in good condition, [2] arrival in damaged condition, and [3] the amount of damages." *Missouri Pacific R.R. v. Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964). Once the shipper establishes a prima facie case, the burden of production shifts to the carrier, who must show "[1] that it was free from negligence and [2] that the damage to the cargo was due to [an exceptional circumstance, such as an act of God, the public enemy, the act of the shipper, public authority, or the inherent vice or nature of the goods themselves]." *Id.*

The liability of a carrier changes somewhat when the shipper sends the cargo "under seal." Shipping goods under seal is a method used by the shipper to give the consignee a guarantee that no one has tampered with the goods. "When goods travelling under seal are delivered to the consignee in imperfect condition, the shipper must submit proof of delivery in good condition other than the mere recital on the bill of lading in order to establish a prima facie case under [§ 11707]." *Ed Miniat, Inc. v. Baltimore & Ohio R.R.,* 587 F.2d 1277, 1280 (D.C.Cir.1978).

> If a shipper chooses to avail himself of the benefits of a seal, it is eminently fair, if he is to prevail on a claim for in transit damage to that shipment, that he supply the court with persuasive proof, not merely evidence of the possibility, that the goods shipped were in good condition when entrusted to the carrier.

*Id.* at 1283.

In an action for damage to goods shipped under seal, "it is inappropriate for the [trial] judge to rely on the bill of lading, claiming the 'property described was in apparent good order.' " *Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d

1013, 1014–15 (11th Cir.1987). "For sealed containers, documentary evidence needs to be supplemented by direct evidence, 'such as the testimony of an eyewitness to the loading of the container'...." *Id.,* 831 F.2d at 1015 (*quoting Blue Bird Prods. Co. v. Baltimore & Ohio R.R. Co.,* 474 F.2d 102, 107 (3d Cir.1973). "The bill of lading is not proof of the contents and condition of the shipment[,] [when] [t]he apparent good condition clause in the bill of lading ... state[s] that the contents and condition of contents [are] unknown." *D.P. Apparel Corp. v. Roadway Express, Inc.,* 736 F.2d 1, 4 (1st Cir.1984). Similarly, " 'the bill of lading does not constitute an admission by the carrier that the shipment is in good condition at time of delivery.' " *Johnson & Johnson v. Chief Freight Lines Co.,* 679 F.2d 421, 422 n. 2 (5th Cir.1982) (*quoting* Robertson, *The Prima Facie Loss and Damage Case,* 1973 Transp.L.J. 73, 81 (footnotes omitted)). This is the rule because the carrier cannot inspect sealed goods.

In addition, when the shipper itself undertakes to load the shipment on board the freight carrier, "[m]ere knowledge on the part of the local agent of the carrier of the negligent manner in which the shipment [has] been packed [cannot] impose liability for this negligence on the carrier ... [if] the injury sustained was due to negligence in this regard and not to any negligence on the part of the carrier." *South Carolina Asparagus Growers' Ass'n v. Southern Ry.,* 46 F.2d 452, 454 (4th Cir.1931). If the shipper improperly packs and loads the shipment and the shipment arrives at its destination damaged, the shipper must show "that some independent act of negligence on the part of the carrier contributed to cause damage to the shipment, notwithstanding the shipper's negligence, before the carrier can be held liable." *Minneapolis, St. Paul & Sault Ste. Marie R.R. v. Metal–Matic, Inc.,* 323 F.2d 903, 906 (8th Cir.1963).

### This Case

■ Finding Van Wyk liable, the trial court explained: Hoover set in motion this series of events that should have not happened, but he caused part of it, and there can

be joint tortfeasors, and I think, I know that this is not a negligence theory against your client, but he contributed to part of the problem in this case, as I see it.

The door was open. Hamilton knew it. He saw the damage. He was there during the loading process. He saw some of the sweating. He saw some of the sagging cartons. At that point he had an obligation to call, to do something, and he did nothing. The truck was not cool enough when it took off, and I make these as findings of fact. The bill of lading says, really what he says is they were in good order, which means that he was either too lazy, too tired, wanted to get on his way, under the gun, had a point of departure that he had to make, and took off. This was late at night, 11:30 at night. So I find that there is liability on the part of Van Wyk.

The Plaintiff has established that they were received in good condition, by Hamilton's own words in that bill of lading, which, to me, is the best evidence in this case, although he backed away from it at a later time. The Court believes the best evidence is what happened at that time. So they were received in good condition, which is the obligation to prove on the part of the Plaintiff.

The carrier delivered the goods in damaged condition at the destination, which has been proven by all evidence, and that there were damages as a result thereof.

The Court also would make a finding of fact that Hoover set in motion this, these events by his handling these items in a day which probably was one of the worst days in June in the history of the city, and that it was done in three and a half hours in a 98 degree, very humid situation, but that your client, his agent, Mr. Hamilton, knew or should have known that these situation's [sic] going to create this damage, and that, in fact, the damage continued during the course of part of the process between the City of Baltimore at 11:30 when it left and when it arrived at that location. I'm sure that it cooled down, but it took awhile for it to cool down.

The trial court found as a matter of fact that the conditions under which Hoover loaded the raspberries into Van Wyk's trailer damaged the shipment, but also that Van Wyk received the raspberries from Hoover in good condition. Receiving the shipment in both a damaged condition and good condition is impossible.

The trial court found that Van Wyk and Hoover jointly and severally caused the damage to the raspberries. We agree with Van Wyk that Mr. Hamilton's failure to notify someone at Van Wyk about Hoover's loading procedures did not proximately cause the damage to the raspberries; however, the trial court also found that Van Wyk's failure to pre-cool properly the trailer caused damage to the raspberries. Contrary to Van Wyk's assertion, the trial court did not hold Van Wyk liable for damage to the shipment that existed prior to the time the shipment was loaded into Van Wyk's trailer; rather, the trial court found that Hoover's negligence in loading the raspberries and Van Wyk's negligence in transporting the raspberries to Michigan in an insufficiently cooled trailer operated together and independently of each other to damage Fruitrade's shipment.

It is well-established that when the shipper undertakes the responsibility of loading the shipment, and the shipment arrives in an imperfect condition, the carrier may not be held liable for the damage unless "some independent act of negligence on the part of the carrier contributed to cause damage to the shipment, notwithstanding the shipper's negligence...." *Metal–Matic, Inc.*, 323 F.2d at 906. Mr. Hamilton indicated to Mr. Wojcik, who recorded the statement in his report, that "inside the [Van Wyk] trailer was at least 55 degrees" at the time the raspberries were loaded by Hoover. This supports the trial court's factual finding that the trailer was too warm at the time it was loaded and that Van Wyk breached its duty to pre-cool the trailer; a duty that Van Wyk admits "was the only service requested [by Fruitrade] other than the actual over-the-road transit instructions."

Van Wyk also argues that the trial court's reliance upon the bill of lading as proof that Van Wyk received the shipment in apparent good order contravenes established case law that, when goods are shipped under seal, declarations on the bill of lading do not prove the contents and condition of the shipment because the seal prevents inspection of the goods. Although we agree with Van Wyk that, ordinarily, when goods are shipped under seal a notation on the bill of lading that the shipment was received in good order does not constitute an admission by the carrier, we recognize that the circumstances in the case *sub judice* are somewhat unusual.

The bill of lading Mr. Hamilton signed indicates that one container of raspberries was shipped under seal, that the contents and condition of the shipment were unknown, and that Van Wyk received the goods in apparent good order. These representations on the bill of lading, however, were not accurate. Hoover did not load the refrigerated ocean container, which was shipped under seal, onto Van Wyk's trailer; rather, Hoover broke the seal on the ocean container and loaded the individually sealed cartons of raspberries onto the trailer.

 Shipping cargo under seal insulates a carrier from liability because the carrier has no means of inspecting the condition of the contents of the cargo. In the case *sub judice*, however, Hoover broke the seal and Mr. Hamilton, who was present while Hoover loaded the raspberries onto the trailer, testified that there was not "a lot of cooling going on" and that the cartons were accumulating a dew. Mr. Hamilton also testified, however, that, when he signed the bill of lading with the notation "rec'd in good order," the shipment, to his visual inspection, "was a frozen load and, yes, you know, from visual inspection, the product was still frozen." Because Hoover broke the seal, it was not inappropriate for "the [trial] judge to rely on the bill of lading, claiming the 'property described was in apparent good order.'" The trial court, as the trier of fact, considered Mr. Hamilton's conflicting deposition statements and found Mr. Hamilton's signature on the bill of

lading, indicating that the goods were received in apparent good order, binding on Van Wyk. Under Rule 8–131(c), an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." We agree with the trial court that, under the circumstances, the notation on the bill of lading, that Mr. Hamilton received the raspberries in good order, controls, and that Van Wyk cannot use the representation on the bill of lading that the raspberries were shipped under seal to shield itself from liability when the seal was broken and the condition of the shipment was obvious to Mr. Hamilton. Mr. Hamilton, at the very least, could have noted on the bill of lading his observations that the shipment looked like it "was starting to melt" and that the "cardboard [was] starting to collapse from the moisture."

To summarize, the evidence sufficiently supports the court's factual finding that Van Wyk's trailer was not properly cooled at the time of loading, and that this factual finding supports the court's legal conclusion that Van Wyk's negligence, independent of Hoover's negligence, caused damage to Fruitrade's shipment of raspberries. Mr. Hamilton testified that he saw the cartons beginning to sweat, and that he saw the cardboard beginning to sag when he left Hoover's terminal; however, he did nothing to alter the temperature of the trailer and he signed the bill of lading indicating that he received the shipment of raspberries in good condition. Moreover, when the shipment reached its destination in Michigan, two days later, the plastic bags containing the raspberries were ruptured, the cartons were crushed and wet, and there was juice on the floor of the trailer. This evidence supports the court's conclusion that although the manner in which Hoover loaded the shipment in Baltimore caused damage to the raspberries, damage undoubtedly occurred while the shipment was in transit. We agree with the trial court that, in addition to the manner in which Hoover loaded the raspberries, damage to the shipment also may be logically attributed to the warm condition of the trailer.

## V. Fruitrade's Allegations

Van Wyk finally contends that Fruitrade's complaint fails to allege that Mr. Hamilton breached a duty to notify his supervisor at Van Wyk that Hoover was using improper loading procedures, and that the complaint fails to allege that the breach of that alleged duty proximately caused Fruitrade's damages. Because we have already determined that the trial court correctly premised Van Wyk's liability on its failure to pre-cool the trailer sufficiently, we need not address the merits of this contention.

## Conclusion

We hold that the en banc panel did not err when it found that 49 U.S.C. § 11706(c)(1) does not bar Fruitrade's claim against Van Wyk. In addition, viewing the evidence in a light most favorable to Fruitrade, we hold that the trial court's factual finding that Van Wyk's trailer was insufficiently pre-cooled was not clearly erroneous and that it reasonably supports the court's legal conclusion holding Van Wyk and Hoover jointly and severally liable for the damage to Fruitrade's shipment of raspberries.

**JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.**